**U.S. Department of Justice**

United States Attorney
District of Maryland
Northern Division

Rod J. Rosenstein
United States Attorney

Stefan D. Cassella
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 JUL 26  P 4: 39

CLERK'S OFFICE
AT BALTIMORE
DIRECT: 410-209-4986
MAIN: 410-209-4800
BY _____ FAX: 410-962-5130 ___ DEPUTY
TTY/TDD: 410-962-4462

July 23, 2012

Caroline Ciraolo
Rosenberg | Martin | Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, Maryland 21201

      Re: <u>United States v. Kwang Kim</u>

Dear Ms. Ciraolo:

  This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). This replaces all previous versions of the offer that have been made to the Defendant and reflects the results of negotiations between this Office and the Defendant's counsel. If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by the close of business on July 15, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

  1. The Defendant agrees to waive indictment and plead guilty to a criminal information charging one count of tax evasion in connection with his 2009 tax return, in violation of 26 U.S.C. § 7201. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

  2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

The Defendant willfully attempted to evade or defeat the assessment of a tax, that there was in fact a material tax due and owing, and that the Defendant engaged in affirmative act, to wit: structuring currency transactions, evidencing his intent.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 5 years incarceration and a $250,000 fine, together with the costs of prosecution. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the

3

Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

The defendant is the owner of KSJB, Inc., doing business as LimeTree Liquors, a retail liquor store operating at 1720 E. Northern Parkway, Baltimore, MD 21206. Between March 27, 2009 and May 5, 2011, the defendant made regular deposits of U.S. currency into his bank account at three banks: Wells Fargo Bank (formerly Wachovia Bank), M&T Bank, and Bank of America, in amounts equal to or just under $10,000. The deposits include at least 16 instances in which the defendant made multiple sub-$10,000 deposits on the same day into the same bank or into different banks. In all, the defendant deposited $1,046,800 in currency, all amounts at or below $10,000, in just over two years. A schedule of the currency deposits is attached as Appendix A to this Agreement.

A review by the IRS of the defendant's tax returns indicates that the defendant under-reported his gross receipts for 2008, 2009 and 2010 by $332,916.63, $232,766.69, and $273,378.00 respectively, resulting in a federal tax loss of $97,986.02 for 2008, $62,322.25 for 2009, and $75,218.61 for 2010. Adding Maryland sales and income taxes for those

4

same years, the defendant's total tax loss for 2008 - 2010 is $326,957.91. Per U.S.S.G., § 2T1.1 and § 2T4.1(G), the Defendant's offense level is 18.

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct pursuant to U.S.S.G. § 3E1.1(a). This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7.   The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.   This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The Defendant reserves the right to request a variance under 18 U.S.C. § 3553(a).

### Obligations of the United States Attorney's Office

9.   This Office agrees to dismiss the pending indictment filed against the Defendant and KSJB, Inc. t/a Limetree Liquors on March 20, 2012, and agrees that it will not file any criminal charges against the Defendant or KSJB, Inc. relating to any tax years other than against the Defendant for tax year 2009 as set forth in this Plea Agreement. This Office further agrees that it will not file any criminal charges against the Defendant or KSJB, Inc. relating to any violation of 31 U.S.C. § 5324. This

Office also agrees to recommend a sentence within the advisory guidelines range.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of any criminal violations that this Office has agreed not to charge.

## Forfeiture

11. On October 18, 2011, the Government seized a total of $260,900 from the defendant (including cash on hand and the funds in two bank accounts). The Defendant agrees that the Government will file a civil forfeiture action against $104,680 (that being ten percent of the amount listed on the schedule of structured deposits in Schedule A), and to consent to the entry of an order of forfeiture in that case. The Defendant understands that none of the forfeited property may be used to satisfy or be credited toward the payment of any taxes, penalties or interest owed to the United States or the State of Maryland in connection with the underreporting of income. The Defendant also understands that the balance of the seized funds will be remitted to the Internal Revenue Service and applied to the Defendant's federal income tax (Form 1040) accounts in the following manner:

| TAX YEAR | AMOUNT |
| --- | --- |
| 2008 | $98,000 |
| 2009 | $58,220 |

12. The Defendant also represents that he is unaware of any third-party interest in any of the specific assets that he has agreed to forfeit, and that he will not assist any third party in asserting a claim to the forfeited assets in the related civil forfeiture case, and that he will testify truthfully in any such proceeding. If any relative, family member or corporation in which the defendant has an interest contests the civil forfeiture action, this agreement is null and void.

## Payment of Taxes

13. Pursuant to the Victim and Witness Protection Act, 18 U.S.C. § 3663(a)(3), the Defendant agrees and understands that the court

6

may enter an order directing him to pay restitution to the IRS in the following amounts for tax years 2008 ($97,986.02), 2009 ($62,322.25) and 2010 ($75,218), **less** the amount to be applied to the Defendant's federal tax liability pursuant to paragraph 11 and any additional payments received or accepted by, or credits granted by, the IRS by the date of sentencing. The parties agree to submit to the court a proposed restitution schedule reflecting the agreed amounts, all payments received and the final restitution amounts on the date of sentencing.

14.     If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. See 26 U.S.C. § 6201(a)(4). IRC § 6201(a)(4)(C) provides that the defendant does not have the right to challenge the amount of this assessment.

15.     If the IRS determines that the amount of restitution exceeds the Defendant's civil tax liability, however, the Government will request an amendment of the restitution order pursuant to 18 U.S.C. § 3573. See IRS Office of Chief Counsel, Notice CC-2011-018, Q&A #10 (August 26, 2011). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

16.     The Defendant agrees to allow the contents of any criminal file pertaining to his conduct maintained by the Office of the U.S. Attorney or the Criminal Investigation Division of the IRS to be given to civil attorneys, agents, and support staff of the IRS to enable them to investigate any and all civil taxes and penalties that may be due and owing by the Defendant and/or any entity formed or controlled by the Defendant. To the extent necessary to effect this disclosure, the Defendant waives any rights he may have pursuant to Title 26, United States Code, Section 7213, and Federal Rule of Criminal Procedure 6(e), and 26 U.S.C. § 6103(h)(4).

## Waiver of Further Review of Forfeiture

17.     The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on

any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Waiver of Appeal

18.   In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a)   The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b)   The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), <u>except</u> as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the term of imprisonment at the upper end of the guideline range ultimately determined by the court to be applicable, (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below the term of imprisonment at the lower end of such guideline range.

   c)   Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

19. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

20. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The

Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

21.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Stefan D. Cassella
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_7/26/12_　　　　　　　　　　　　　　_[signature]_

Date　　　　　　　　　　　　　　　　Kwang Kim

I am Caroline Ciraolo, attorney for the Defendant. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_7/26/12_　　　　　　　　　　　　　　_[signature]_

Date　　　　　　　　　　　　　　　　Caroline Ciraolo

11

## APPENDIX A
## SCHEDULE OF CASH DEPOSITS
## M&T BANK ACCOUNT NO. ▓▓▓▓0943
## WACHOVIA (WACH) ACCOUNT NO. ▓▓▓▓▓▓1442

| DEPOSIT DATE | BANK | ACCOUNT NO. | BRANCH | TIME | CASH DEPOSIT |
| --- | --- | --- | --- | --- | --- |
| Friday, March 27, 2009 | WACH | 1040638361442 | | | 6,000.00 |
| Tuesday, March 31, 2009 | WACH | 1040638361442 | | | 5,000.00 |
| Monday, April 06, 2009 | WACH | 1040638361442 | | | 5,000.00 |
| Friday, April 10, 2009 | WACH | 1040638361442 | | | 7,000.00 |
| Tuesday, April 14, 2009 | WACH | 1040638361442 | | | 9,000.00 |
| Monday, April 20, 2009 | WACH | 1040638361442 | | | 8,000.00 |
| Monday, April 20, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Tuesday, April 28, 2009 | WACH | 1040638361442 | | | 5,000.00 |
| Thursday, April 30, 2009 | WACH | 1040638361442 | | | 5,000.00 |
| Tuesday, May 05, 2009 | WACH | 1040638361442 | | | 8,000.00 |
| Friday, May 08, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, May 11, 2009 | M&T | 9843280943 | | | 5,000.00 |
| Wednesday, May 13, 2009 | WACH | 1040638361442 | | | 8,000.00 |
| Monday, May 18, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, June 08, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Tuesday, June 09, 2009 | WACH | 1040638361442 | | | 9,000.00 |
| Thursday, June 11, 2009 | WACH | 1040638361442 | | | 9,000.00 |
| Thursday, June 11, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Friday, June 12, 2009 | WACH | 1040638361442 | | | 6,000.00 |
| Wednesday, June 17, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, June 22, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, June 22, 2009 | M&T | 9843280943 | | | 8,000.00 |
| Monday, June 22, 2009 | WACH | 1040638361442 | | | 2,000.00 |
| Monday, June 29, 2009 | M&T | 9843280943 | | | 8,000.00 |
| Monday, July 06, 2009 | M&T | 9843280943 | | | 9,000.00 |

| DEPOSIT DATE | BANK | ACCOUNT NO. | BRANCH | TIME | CASH DEPOSIT |
|---|---|---|---|---|---|
| Monday, July 06, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Wednesday, July 08, 2009 | WACH | 1040638361442 | | | 4,000.00 |
| Monday, July 13, 2009 | M&T | 9843280943 | | | 5,000.00 |
| Monday, July 13, 2009 | M&T | 9843280943 | | | 1,000.00 |
| Wednesday, July 15, 2009 | WACH | 1040638361442 | | | 5,000.00 |
| Monday, July 27, 2009 | M&T | 9843280943 | | | 4,000.00 |
| Monday, July 27, 2009 | M&T | 9843280943 | | | 7,000.00 |
| Wednesday, July 29, 2009 | WACH | 1040638361442 | | | 6,000.00 |
| Thursday, August 06, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Tuesday, August 11, 2009 | WACH | 1040638361442 | | | 4,900.00 |
| Wednesday, September 09, 2009 | WACH | 1040638361442 | | | 7,000.00 |
| Monday, September 14, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, September 21, 2009 | M&T | 9843280943 | | | 8,000.00 |
| Friday, September 25, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, September 28, 2009 | M&T | 9843280943 | | | 8,000.00 |
| Monday, September 28, 2009 | M&T | 9843280943 | | | 8,000.00 |
| Tuesday, October 13, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, October 19, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, November 30, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Wednesday, December 02, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, December 07, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, December 14, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, December 21, 2009 | M&T | 9843280943 | | | 9,000.00 |
| Monday, January 04, 2010 | M&T | 9843280943 | | | $ 9,000.00 |
| Wednesday, January 06, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, January 11, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Wednesday, January 27, 2010 | M&T | 9843280943 | | | 9,450.00 |
| Monday, February 01, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, February 01, 2010 | M&T | 9843280943 | | | 9,500.00 |
| Monday, February 08, 2010 | M&T | 9843280943 | | | 5,000.00 |
| Monday, March 01, 2010 | M&T | 9843280943 | | | 8,000.00 |

| DEPOSIT DATE | BANK | ACCOUNT NO. | BRANCH | TIME | CASH DEPOSIT |
|---|---|---|---|---|---|
| Friday, March 05, 2010 | WACH | 1040638361442 | | | 8,000.00 |
| Monday, March 08, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, March 15, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Friday, March 19, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, March 22, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, March 29, 2010 | M&T | 9843280943 | | | 6,500.00 |
| Monday, April 05, 2010 | M&T | 9843280943 | | | 8,000.00 |
| Monday, April 05, 2010 | WACH | 1040638361442 | | | 2,380.00 |
| Wednesday, April 07, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, April 12, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Tuesday, April 13, 2010 | WACH | 1040638361442 | | | 7,000.00 |
| Thursday, April 15, 2010 | M&T | 9843280943 | | | 8,000.00 |
| Thursday, April 15, 2010 | WACH | 1040638361442 | | | 2,800.00 |
| Monday, April 19, 2010 | M&T | 9843280943 | | | 5,000.00 |
| Friday, April 23, 2010 | WACH | 1040638361442 | | | 5,000.00 |
| Monday, April 26, 2010 | M&T | 9843280943 | | | 6,000.00 |
| Monday, May 03, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Thursday, May 06, 2010 | WACH | 1040638361442 | | | 5,000.00 |
| Monday, May 10, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, May 17, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, May 17, 2010 | WACH | 1040638361442 | | | 7,600.00 |
| Friday, May 21, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Tuesday, June 01, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Thursday, June 03, 2010 | WACH | 1040638361442 | | | 6,000.00 |
| Monday, June 07, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, June 14, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, June 21, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Thursday, June 24, 2010 | WACH | 1040638361442 | | | 5,000.00 |
| Monday, June 28, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Tuesday, July 06, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Tuesday, July 06, 2010 | WACH | 1040638361442 | | | 7,000.00 |

<mark>

| DEPOSIT DATE | BANK | ACCOUNT NO. | BRANCH | TIME | CASH DEPOSIT |
|---|---|---|---|---|---|
| Monday, July 12, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Tuesday, July 20, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, August 02, 2010 | M&T | 9843280943 | | | 9,500.00 |
| Thursday, August 05, 2010 | WACH | 1040638361442 | | | 6,000.00 |
| Monday, August 09, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Wednesday, August 11, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Friday, August 13, 2010 | WACH | 1040638361442 | | | 3,000.00 |
| Tuesday, August 24, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, August 30, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, August 30, 2010 | WACH | 1040638361442 | | | 7,000.00 |
| Tuesday, September 07, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Wednesday, September 08, 2010 | WACH | 1040638361442 | | | 8,000.00 |
| Friday, September 10, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, September 13, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Wednesday, September 15, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, September 20, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Thursday, September 23, 2010 | WACH | 1040638361442 | | | 8,000.00 |
| Monday, September 27, 2010 | M&T | 9843280943 | | | 8,000.00 |
| Wednesday, October 06, 2010 | WACH | 1040638361442 | | | 8,000.00 |
| Tuesday, October 12, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Wednesday, October 13, 2010 | WACH | 1040638361442 | | | 500.00 |
| Monday, October 18, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, October 18, 2010 | M&T | 9843280943 | | | 8,000.00 |
| Monday, November 01, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Wednesday, November 03, 2010 | WACH | 1040638361442 | | | 8,000.00 |
| Monday, November 08, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, November 08, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, November 15, 2010 | M&T | 9843280943 | | | 9,500.00 |
| Monday, November 15, 2010 | WACH | 1040638361442 | | | 1,000.00 |
| Monday, November 22, 2010 | M&T | 9843280943 | | | 9,500.00 |
| Friday, December 03, 2010 | M&T | 9843280943 | | | 7,000.00 |
</mark>

| DEPOSIT DATE | BANK | ACCOUNT NO. | BRANCH | TIME | CASH DEPOSIT |
|---|---|---|---|---|---|
| Monday, December 06, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, December 13, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Friday, December 17, 2010 | M&T | 9843280943 | | | 5,000.00 |
| Monday, December 20, 2010 | M&T | 9843280943 | | | 5,000.00 |
| Monday, December 27, 2010 | M&T | 9843280943 | | | 9,000.00 |
| Monday, January 03, 2011 | M&T | 9843280943 | | | 9,000.00 |
| Friday, January 07, 2011 | M&T | 9843280943 | | | 9,000.00 |
| Monday, January 10, 2011 | M&T | 9843280943 | | | 9,000.00 |
| Tuesday, January 11, 2011 | M&T | 9843280943 | | | 9,000.00 |
| Tuesday, January 18, 2011 | M&T | 9843280943 | | | 9,000.00 |
| Monday, January 24, 2011 | M&T | 9843280943 | | | 6,000.00 |
| Monday, February 28, 2011 | M&T | 9843280943 | | | 8,000.00 |
| Friday, March 04, 2011 | M&T | 9843280943 | | | 7,000.00 |
| Monday, March 07, 2011 | M&T | 9843280943 | | | 4,000.00 |
| Tuesday, March 08, 2011 | M&T | 9843280943 | | | 4,600.00 |
| Monday, March 14, 2011 | M&T | 9843280943 | | | 5,700.00 |
| Thursday, March 17, 2011 | M&T | 9843280943 | | | 5,870.00 |
| Monday, April 04, 2011 | M&T | 9843280943 | | | 8,500.00 |
| Tuesday, April 05, 2011 | M&T | 9843280943 | | | 2,000.00 |
| Wednesday, April 06, 2011 | WACH | 1040638361442 | | | 5,000.00 |
| Thursday, May 05, 2011 | M&T | 9843280943 | | | 10,000.00 |

2009-2011 Grand Total  $   1,046,800.00